DECISION
Plaintiff has appealed the value of his home for the 2007-08 tax year. Trial was held by telephone September 8, 2008. Plaintiff appeared on his own behalf. Defendant was represented by Jack Graff and Donald MacNicoll, appraisers with the Washington County assessor's office.
 I. STATEMENT OF FACTS
The subject property, identified as Account R2123148, is a 4,200 square foot, 6-bedroom, 3.5 bath home, built primarily during the 2005 calendar year. The parties agree the home was 90 percent complete by the end of calendar year 2005. Plaintiff purchased the property in January 2006 for $539,833, although the undisputed testimony is that Plaintiff and the seller agreed upon the purchase price in August 2005. Plaintiff moved into the home in January 2006, one year before the assessment date for the 2007-08 tax year.
The real market value (RMV) of the subject property on the assessment and tax rolls for the 2007-08 tax year is $604,110 for land and improvements, including $52,610 for "exception RMV." The $52,610 "exception RMV" is Defendant's estimate of the added market value of the property representing the final 10 percent completion of the home in 2006. The assessed value (AV) on the rolls is $319,540. Plaintiff requests a reduction in RMV to $561,373. Moreover, Plaintiff believes there should be no exception RMV. Defendant has estimated the RMV of the *Page 2 
property under the cost and sales comparison approaches to be $619,000, although Defendant recommends a reduction in total RMV to $596,435 because of an error in the original square footage of the home. Defendant also recommends a reduction in the exception RMV to $44,935 (down from $52,610), and an overall reduction in AV to $315,369. (Def's Ex A at 1.) Although the parties are only apart approximately $35,000 in RMV, which is less than six percent of the total value, they have been unable to reach an agreement about the value.
 II. ANALYSIS
The issues in this case are the correct overall RMV, whether there should be any exception RMV and, if so, how much, and finally, the correct AV. Plaintiff bears the burden of proof, and must establish, by a preponderance of the evidence, that value reductions greater than those recommended by Defendant are warranted. ORS 305.427.[1]
A. Real Market Value
RMV for purposes of ad valorem taxation is defined by statute as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1). The assessment date for the 2007-08 tax year was January 1, 2007.[2]
The Department of Revenue (department) has promulgated an administrative rule instructing that the determination of RMV should be based on consideration of the three standard approaches to value — sales comparison approach, cost approach, and income approach. *Page 3 
OAR 150-308.205-(A) (2)(a).[3] the rule further provides that all three approaches cannot always be applied, but should at least be investigated. Id.
Plaintiff presented eight points in support of his value estimate. At trial, Plaintiff emphasized three of the eight points. First, a neighbor's house that is similar in size, and built in 2005, was on the market for 15 months and ultimately sold in May 2008 for $566,000, compared to an RMV on the tax rolls of $595,167. Second, Plaintiff submitted a document that discusses home pricing trends in Washington County indicating that the market in Washington County was flat from the third quarter 2006 through the first quarter 2007. Plaintiff insists that that information supports his contention that there should not have been any increase in his RMV between 2006 and 2007. (Ptf's Ex 7-2.) Third, Plaintiff notes that he bought his home in January 2006 for $539,000 and argues that a reasonable increase of five percent indicates an estimated value of $565,950, a figure that compares favorably with his request for a reduction to $561,373.
Plaintiff also submitted information from two realtors, one identified as a "Neighborhood Valuation Report" and the other as a "Comparative Market Analysis." (Ptf's Exs 5-2 and 5-3.) Another of Plaintiff's exhibits is a table reflecting the sale of his home and 10 other homes purported to be comparable, that collectively had an average sale price of $510,850. (Ptf's Ex 4-2.) Plaintiff contends that information in that exhibit establishes that his "sale price would be $561,373." (Ptf's Ltr at 2, Aug 28, 2008.) Plaintiff also argues that the increase in the improvement value of his property (his home) is not proportional because the final percentage of work done (10 percent) resulted in a value increase of 35.4 percent, and the increase in his RMV is not proportional to that of a neighbor's property. (Id.) *Page 4 
Defendant submitted a valuation report and includes information about the subject property, maps and photographs of the subject and four comparable properties, a sales grid comparing the subject property to four comparable sales, and market trend data for the relevant time period. (Def's Ex A.) All four of Defendant's comparables were built by Don Morrisette, who also built Plaintiff's home. Moreover, the four sales are in Plaintiff's neighborhood. Defendant made adjustments for time, lot size, age, square footage, and other minor differences between the properties. (Id. at 10.) Defendant's adjusted sales establish a range in value from a low of $586,305 to a high of $676,976. Defendant relied primarily on sales #1 and #2, both of which had very minor overall adjustments ($3700 and $100). The indicated value of those sales was $626,300 and $611,626, with a mean of $619,000. (Id.) Defendant's opinion of value is that Plaintiff's property had an RMV as of January 1, 2007, of $619,000. Defendant, however, has recommended a slightly lower value of $596,435 because of some unexplained error in square footage originally in Defendant's records.
The court concludes that Plaintiff has failed to meet his statutory burden of proof. The court finds Defendant's evidence more persuasive than Plaintiff's evidence. To begin with, Defendant presented market evidence based on adjusted sales of similar properties, whereas Plaintiff relied upon the unadjusted sale of a neighbor's home, his own unprofessional opinion that the increase in value from the time of purchase to the assessment date should be only 5 percent, and information on the average of 10 sales unadjusted for differences between those properties and the subject. Defendant's market trend data for the period of time between the date Plaintiff agreed to purchase his home (August 2005) to the applicable assessment date of January 1, 2007, was approximately 25 percent, including a flat or declining market for the last seven months of calendar year 2006. (Def's Ex A at 14, 15.) Nonetheless, Defendant's *Page 5 
recommended value of $596,435 represents only a 10.5 percent increase in value over the purchase price for that 16 month period. Plaintiff does have two market analyses, but only one of the two actually provides an estimate of value, and there is no explanation of how the value was derived. (Ptf's Ex 5-3.) Plaintiff's other analysis only provides a range of values, and also lacks any explanation or interpretation of the data. (Ptf's Ex 5-2.) On the evidence before it, the court concludes that the RMV of Plaintiff's property as of January 1, 2007, was $596,435.
B. Exception RMV
"Exception" value for the 2007-08 tax year is based on improvements to the property in 2006. ORS 308.153. The parties agree that Plaintiff's home was only 90 percent complete as of January 1, 2006, and that exception value represents the increase in the value of the property represented by the 10 percent completion of the home. Plaintiff has no evidence to support his opinion and the court therefore accepts Defendant's recommendation for a reduced exception RMV of $44,395.
C. Assessed Value
Although Plaintiff, in his Complaint, has requested that the court "reconsider assessed value to make lower value," Plaintiff provided no evidence regarding AV. The statute requires that the maximum assessed value (MAV) be calculated by adding together 103 percent of the MAV of the property from the prior tax year to the RMV of the new improvements "multiplied by the ratio * * * of the average maximum assessed value over the average real market value for the assessment year." ORS308.153(1)(b). There is no evidence that Defendant erred in its calculation and the court therefore accepts Defendant's recommended AV of $315,369. *Page 6 
 III. CONCLUSION
The court has carefully reviewed the evidence and, based on the analysis set forth above, concludes that Plaintiff has failed to meet his burden of proof for a reduction in value and that Defendant's value recommendations should be, and are hereby, accepted. Now, therefore,
IT IS THE DECISION OF THIS COURT that the RMV of Plaintiff's property as of January 1, 2007, is $596,435;
IT IS FURTHER DECIDED that the exception RMV of Plaintiff's property is $44,395; and
IT IS FURTHER DECIDED that the AV of Plaintiff's property is $315,369.
Dated this ____ day of October 2008.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on October 24,2008. The Court filed and entered this document on October 24,2008.
[1] Unless noted otherwise, references to the Oregon Revised Statutes (ORS) are to 2005.
[2] In Oregon, the "assessment year" is a calendar year, and the "tax year" is a 12 month period beginning on July 1 each year. ORS308.007(1)(b), (c). The annual "assessment date" is January 1, per ORS308.007(1)(a) and ORS 308.210, and corresponds to the tax year beginning six months later on July 1. ORS 308.007(2). Thus, for the 2007-08 tax year, the assessment date was January 1, 2007, the tax year began on July 1, 2007, and ended 12 months later on June 30, 2008.
[3] Reference to the Department's Oregon Administrative Rules (OAR) are to the 2006 edition. *Page 1